Richard M. TAYLOR and Lydia Taylor
v.
The UNITED STATES.
Cong. No. 11–55.

United States Court of Claims
May 8, 1957.

Harold D. Cohen, Washington, D. C., for the plaintiffs.

William A. Stern II, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

We have this case pursuant to a Resolution of the House of Representatives requesting us to report to it our findings of fact and our conclusions as to whether

the plaintiffs have a claim, legal or equitable, against the United States.

The facts are set forth in detail in our findings, and need not be repeated here at length. They show that the plaintiffs were presented with what seemed to be an opportunity to acquire a one-third interest in a promising enterprise in return for the use of $150,000 of their money for only a few months. The $112,500 which went to the Government was tendered by them and their associates in the hope that so large a tender would make it more likely that their offer of $750,000 would be accepted. When the offer was not accepted, fair dealing on the part of the plaintiffs' associates would have caused them to consult the plaintiffs as to whether they were willing to risk their $112,500 in a much larger offer. They were not consulted, however, until the offer had been made, and their money tendered with it. It is altogether likely that if, when they learned of this, and the Government had not yet accepted the offer, they had objected and demanded the return of their money, they could have gotten it back. Again, however, they were persuaded by their associates that the transaction would be a profitable one, and they consented to it.

When the Government accepted the offer of $1,800,000, it stipulated that the $112,500 which it had in its possession could be kept by the Government as liquidated damages if the rest of the $1,800,000 was not paid. The Government had the right to insert in the contract any reasonable provisions which it chose. It was prudent of it to require security for performance of the contract, since, as the event proved, the contract might tie up the property for several months and still never be completed by payment.

■ The plaintiffs say that the agreement that the $112,500 should be retained as liquidated damages was a stipulation, not for liquidated damages, but for a penalty, and was therefore illegal. If the Government had not had the money in its hands when the contract was under consideration, and had said to the offeror that its offer would be accepted if it would deposit $112,500, which would be retained as liquidated damages if the contract was made but was not performed by payment, and the $112,500 had then been deposited with the Government, one could not say that the required deposit was so large that it exceeded the possible or even probable damage to the Government which would result from a failure to pay the rest of the agreed price. In the autumn of 1949, when the contract was made, there was no market for this plant, and it is altogether likely that if the time for payment had not been extended far into 1950, but an attempt had been made to resell the property in late 1949 or early 1950, the resale would have had to be at a reduction of much more than $112,-500 from the $1,800,000 which the plaintiffs' company had agreed to pay. We cannot say that the sum agreed to was a penalty and was not a lawful provision for liquidated damages.

The circumstance that the sum which the Government stipulated as the amount of liquidated damages was $112,500 and not some considerably smaller sum, was an accident. If the prior offer of $750,-000, with its unusually large percentage of good faith money attached, had not occurred, there is no likelihood that the plaintiffs' check for $112,500, would ever have been written or tendered. When the Government invited bids, and the plaintiffs' company submitted the bid for $1,800,000 which was accepted, the invitation for bids required only that bids be accompanied by payments of 1 percent of the amount of the bids. That would have been $18,000 in the case of the bid of the plaintiffs' company. Since the offer was for a cash purchase, it is not likely that the Government would have required an additional down-payment in addition to the $18,000 to be retained as liquidated damages in case of default. From the conduct of the Government in later attempts to sell the property, it may reasonably be concluded that the sum so required by the Govern-

ment would not, in any event, have been more than $50,000.

The fact that the property in question never was sold, but remained the property of the Government, was also an accident, and a most fortunate one for the Government. The delay and ultimate default of the plaintiffs' company postponed other efforts to sell the plant so long that, before any sale was closed, the Government needed the property for defense purposes and took it off the market. It continued to grow in value and is now worth many times what the plaintiffs' company agreed to pay for it.

### Conclusion

Our conclusion is that the plaintiffs have no claim, legal or equitable, of a kind which could be enforced in court. Whether, in the circumstances, Congress should provide for a payment to the plaintiffs is, of course, a question for Congress alone.

The opinion, findings of fact, and conclusion reached will be certified to Congress pursuant to House Resolution No. 309, 84th Congress, adopted July 30, 1955.

LARAMORE, Judge, concurs.

JONES, Chief Judge, made the following additional comment:

I agree completely with the facts as found by the majority, and since there was no privity of contract I agree that there is no liability either legal or equitable on the part of the defendant.

Since, however, the highest liquidated damage provision that defendant included in any of its requests for bids was $50,000, and since subsequent events clearly showed that defendant was fortunate in the fact that no sale was finally consummated, I would recommend that Congress consider returning that part of the deposit that is in excess of $50,000, inasmuch as the latter amount is abundantly sufficient to compensate the defendant for both the expense and trouble caused by the failure of the American Steel and Tube Corporation to consummate its agreement. In other words, I would recommend the payment of $62,500 to the Taylors, even though it is largely in the nature of a gratuity.

WHITAKER and LITTLETON, Judges, join in the foregoing comment.